MORGANTON FULL FASHIONED HOSIERY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11035.    Promulgated April 28, 1950.

*Robert J. Bird, Esq.,* and *William G. Galliher, Jr., Esq.,* for the petitioner.

*Edward M. Woolf, Esq.,* for the respondent.

OPINION.

LEECH, *Judge*: The first issue is with respect to respondent's action in adjusting the petitioner's deduction for depreciation for the three years here involved by increasing the anticipated useful life of its machinery and equipment.

The record discloses that in 1935, after conference between the officers of petitioner and representatives of the respondent, a depreciation rate was fixed by agreement based upon a useful life of 15 years for new and 12 years for second-hand machinery and equipment. The petitioner carried upon its books two general accounts, one designated as "machinery account" and the other as "second-hand machinery." These machinery accounts were made up from a number of subsidiary accounts, petitioner's machinery and equipment being

of various types. Depreciation has always been taken upon a composite basis and was so continued under the agreement of 1935.

It is respondent's contention, upon brief, that petitioner's objection to the adjustment of its depreciation rates for the years 1941, 1942, and 1943 is based upon the premise that the agreement of 1935 was binding upon the respondent and that these agreed rates must be applied for the taxable years, irrespective of the conditions then actually existing. The record, however, does not support the respondent in this position. Petitioner does not take the position that the respondent is precluded from adjusting the rates for depreciation fixed under the 1935 agreement, if such rates as applied to the taxable years are, in fact, unreasonable. Its contention is that the application of the agreed rates was proper for the years involved in the light of the conditions then known or reasonably to have been anticipated at the close of each of those years. It contends that these rates are shown to have been correct in the light of its experience in the hosiery business, taking into consideration conditions existing at the close of each of the taxable years, together with the conditions which could reasonably have then been anticipated. Petitioner charges that the contested adjustment in the rates to increase the probable useful life of portions of its machinery and equipment resulted from a determination by respondent made in 1946, three years after the close of the taxable period. It is argued that this determination was based, not upon conditions known or reasonably to have been anticipated at the close of each of these years, but upon conditions which arose during the course of the year, and that in making this determination the respondent used "hindsight" instead of "foresight."

Respondent does not dispute the rule that a reasonable rate for depreciation is to be determined upon the facts existing as of the close of the respective taxable year. *Leonard Refineries, Inc.*, 11 T. C. 1000; *Commissioner* v. *Mutual Fertilizer Co.*, 159 Fed. (2d) 470. Respondent insists, however, that his determination, although made subsequent to the three taxable years, was made in the light of conditions existing as of the close of those years.

We have examined the evidence carefully and think it definitely establishes that a drastic change in conditions facing the full fashioned hosiery business was in progress prior to the three taxable years. A large part of petitioner's machinery and equipment was used in the knitting of silk stockings. The advent of nylon, which became available to the trade in 1940, practically spelled the doom of the silk stocking industry. Nylon yarn was allocated by the du Pont Co., its sole manufacturer, for use on 45- and 51-gauge knitting machines. Petitioner had no 51-gauge machines and, although the only ma-

chines it possessed suitable for the knitting of nylon yarn were those of 45-gauge, the manufacture of nylon stockings by petitioner in 1940, the first year nylon became available, accounted for the 20 per cent of its total production.

Following the United States' entry into the war, both nylon and silk were frozen by the Government and thus became unavailable. Petitioner thereafter used rayon and a mixture of cotton and rayon. It has never made more than a small amount of all-cotton stockings.

The record shows that at the close of each of the taxable years petitioner's income tax schedules were made up by its accountant and discussed with petitioner's president. The question was raised on each occasion as to whether or not it should apply for an increase in its depreciation rates by reason of existing conditions, together with those which it could anticipate that it would have to meet. Respondent had, in January, 1942, issued his Revised Bulletin F, setting out a composite useful life of 15 years for silk-knitting machines, and petitioner's officers decided not to request an allowance for additional depreciation, but to continue the application of the agreed rate of 1935, although it was apparent that the facilities in the petitioner's machinery account used in the knitting of the silk were then practically obsolete.

Shortly prior to the taxable years, many improvements were made in knitting machines. The number of sections had been greatly increased. What was known as the "round heel" attachment had been developed and was being largely used. This attachment eliminated the need and use of "footer" machines. The leg of the stocking theretofore had to be knitted on a "legger" machine, after which it was transferred by hand to a "footer" machine, which knitted the foot onto the leg. The new device made the knitting of a stocking one operation instead of two. Another invention had been the circular knitting machine, which made a seamless stocking and was thought to be a very definite threat to the business equipped with machines of the earlier type.

Upon the record, we conclude that, at the end of each of the taxable years, the rate of depreciation theretofore applied was accurate and did not require revision. We hold that the depreciation claimed by petitioner for these years was a reasonable allowance therefor. The action of respondent in increasing the composite useful life of petitioner's machinery and equipment is disapproved.

The second issue involves the propriety of respondent's action in computing petitioner's invested capital credit for excess profits tax purposes by application of section 713 (g) (5) of the Internal Revenue Code in its classification of petitioner as a member of a "controlled group." There is no dispute between the parties that this contested

action is correct if petitioner is in fact a member of a "controlled group" within the purview of the cited section.

Section 713 (g) (5) thus defines a "controlled group":

\* \* \* As used in this paragraph, a controlled group means one or more chains of corporations connected through stock ownership with a common parent corporation if (i) more than 50 per centum of the total combined voting power of all classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock, of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations and (ii) the common parent corporation owns directly more than 50 per centum of the total combined voting power of all classes of stock entitled to vote or more than 50 per centum of the total value of shares of all classes of stock, of at least one of the other corporations.

Here the corporate petitioner owned all of the issued and outstanding stock, both common and preferred, of the Huffman Full Fashioned Hosiery Mills, Inc. It had no other subsidiary, nor did it have a parent corporation. The Huffman Full Fashioned Hosiery Mills, Inc., had no subsidiary. Petitioner argues that, under the quoted statutory definition of "controlled group," three corporations, at least, are necessary, while here the only subsidiary corporation owned by the parent is the Huffman Full Fashioned Hosiery Mills, Inc., and that the latter company is not a member of a chain of corporations controlled by a parent because a chain must necessarily have more than one link. The question here presented has never been raised before in any court, so far as we know. The quoted definition is rather confused. The legislative history of the section discloses only that it was the intention of Congress to apply the adjustment of invested capital as there set out to a corporation which was a member of a group controlled by stock ownership. The section of the code here in question was added by the Revenue Act of 1942. The report of the Committee on Ways and Means of the House of Representatives, which accompanied that bill, states:

This section is applicable to taxable years beginning after December 31, 1941, and applies to any taxpayer which is a member of a controlled group and which owns stock in one or more corporations in such controlled group acquired after the beginning of the taxpayer's first taxable year under the excess profits tax. In general, it provides that such stock owned by the taxpayer on any day of the taxable year shall be a daily capital reduction for such day.

The Report of the Finance Committee of the Senate accompanying the bill in the Senate reads:

This section, which is identical with section 210 of the House bill, is applicable to taxable years beginning after December 31, 1941, and applies to any taxpayer which is a member of a controlled group and which owns stock in one or more corporations in such controlled group acquired after the beginning of the taxpayer's first taxable year under the excess profits tax. In general, it provides that such stock owned by the taxpayer on any day of the taxable year shall increase

the daily capital reduction for such day (or, if the taxpayer has made no previous distributions resulting in daily capital reduction, such stock owned by the taxpayer on such day shall be a daily capital reduction for such day).

Respondent has, by his Regulations 112, section 35.713–2, interpreted the above definition of a "controlled group" to mean two or more corporations and to include a parent corporation owning the stock of one subsidiary, as is the present situation. The reason for and the purpose of the elimination of the cost of the stock of the subsidiary in the computation of daily invested capital would seem to be the prevention of a duplication of credit for what, in fact, is the same investment. This reason and purpose manifestly apply with equal force where the parent corporation had only one controlled subsidiary instead of two. We think under all the circumstances it is only reasonable to construe the meaning of the word "chain" as thus used by Congress to include the parent with the subsidiary. We therefore conclude that the quoted statutory definition of "controlled group" includes the present situation, where petitioner is unquestionably in control, through stock ownership, of the Huffman Full Fashioned Hosiery Mills, Inc. In this connection it seems significant that although such a condition is certainly not unique and probably has existed in many cases, it appears that respondent's regulatory interpretation of this confused definition has not been questioned in any decided case.

We hold that petitioner was a member of a "controlled group" within the purview of section 713 (g), and sustain respondent in his contested adjustment of petitioner's daily invested capital in the computation of its credit for excess profits tax purposes.

The third issue becomes moot upon our decision of the first issue.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

VAN FOSSAN, *J.*, dissenting: I can not agree that two links constitute a chain and I therefore dissent on that issue.